The opinion of the court was delivered by
White, J.
The arguments, both oral and written, in this cause have *578 taken a wide range, but as we have formed a conclusion from'the face of the papers, as explained by the documentary proof, we are compelled to state the facts and pleadings somewhat at length in order to make our conclusion clear.
In April, 1866, Henry Frellsen sued Govy Hood on seven notes drawn by him to the order of Stevenson & Frellsen, dated at various times between the 15th of October and the 10th of January, 1863, all bearing eight per cent interest from maturity until paid, amounting, in principal, to $39,319 45. Hood confessed judgment, accompanied with stay of execution, which was accordingly rendered for a sum in principal and interest aggregating about sixty thousand dollars. On the 22d of July, 1868, under fieri facias issued in execution of the judgment thus rendered ; and after due proceedings on the 5th of September, 1868, the sheriff adjudicated to Henry Frellsen, the plaintiff in execution, the following mentioned property: A tract known as the “ Home Place,” one known as the “ Black Bayou Place,” and the undivided half of another known as the “Hood & Wilson tract.” Subsequently, under an alias writ, other land was acquired by the plaintiff in execution, the amount of sales being duly credited on both writs. In December, 1868, Hood was adjudicated a voluntary bankrupt, his schedules showing him to be overwhelmingly insolvent, and his statement of assets containing no mention of the property above referred to ; and in fact really no assets of any consequence. On the 27th of January, 1871, Hood was finally discharged. In May, 1871, Henry Frellsen sold to Hood for the sum of $30,155, payable in six equal installments, evidenced by notes bearing eight per cent interest from date, the following property: The Home Place and a divided half of the Hood & Wilson Place, with another tract of land. The land thus conveyed being all land which Frellsen acquired at the execution sales already referred to. In December, 1874, none of the notes for the purchase price having been paid, Frellsen took executory process to enforce the payment of those which had matured. Whereupon the present controversy began by an injunction sued out by Hood on the following grounds, as stated in the petition :
1st. “ Because at the time the aforesaid six promissory notes purport to have been executed, the said Henry Frellsen was indebted to your petitioner in the sum of $13,300, which amount, together with legal interest thereon, ought to have been credited by said Frellsen on the first three of said mortgage notes as they respectively fell due. That said sum was for two notes, each for the sum of $6,650, executed by Geo. G. Wilson to the order of petitioner, and transferred by petitioner to Stevenson & Frellsen, and known as the Hood & Wilson notes.” The petition continues, and says : “ Wherefore, petitioner pleads the said sum in compensation, and set-off of said Frellsen’s claim, and avers that *579 the attempt of said Erellsen to collect the whole of said notes sued on is a gross fraud, * * * it having been thoroughly understood at the time petitioner executed the same, that a sufficient amount or number of them be surrendered and cancelled to cover the aforesaid Hood & Wilson notes.”
2d. “ That for the year 1871 petitioner’s Hood & Wilson Place was rented for the use of Erellsen for the sum of $1200, the lease being in the name of Erellsen, which said sum the said Erellsen agreed also to credit on said notes sued on, * ' * * which sum is now pleaded in compensation.”
3d. That for the year 1868 petitioner’s plantations, known as the Black Bayou and Home plantations, were leased to one John W. Boice, and that the Home Place was also leased to Boice for the years 1869, 1870 and 1871; that all of said rents for the said years, which amounted in whole to the sum of $12,500, were agreed by said Erellsen to be credited on said notes, and said amounts are pleaded in compensation.
4th. That at various times petitioner has sold a large number of town lots amounting to $1200, which sum was also passed to the credit of said Erellsen, and which is pleaded in compensation of the notes sued on.
After charging fraud on the part of Erellsen, the petition concluded with a prayer for an injunction and for its perpetuation, that the notes sued on be cancelled and given up in consequence of their extinction by compensation for judgment for the overplus eight thousand dollars, and for damages.
On the 28th November, 1876, an amended petition was filed, reiterating the allegations of the original petition and praying trial by jury. ■On June 11,1877, another supplemental petition was filed, which, in substance, averred as follows : That the original judgment was a consent judgment, and the sale under it a simulation, intended only to secure Erellsen and not to make Erellsen the owner, but simply to secure Erellsen’s debt, an agreement being contemporaneously formed by which, although the paper title was to be in Erellsen, the real ownership was to remain in the plaintiff; that it was understood that Erellsen was to lease out the property and credit the rents, as well as those then due, as also those to become due in the future; that the George G. Wilson notes were given to Frellsen for collection in 1854, and had never been accounted for, and the amount of which he owes, as stated in the original petition; that at the time of confessing judgment he was in a feeble condition of mind ■and body; was unable to manage successfully his business ; was entirely under the influence of Edward Sparrow, who was the counsel of Erellsen, who deceived and defrauded him in the interest of Erellsen. That at the time of the bankruptcy proceedings, which were gotten up by *580 Edward Sparrow, the agent of Erellsen, petitioner then believed they went in his, petitioner’s, interest, but now he discovers it was all managed and concocted in the interest of Erellsen for the purpose of defeating the other creditors of petitioner, as well as petitioner himself, out of a large amount of money, over and above the amount due on the judgment in favor of Erellsen. That all papers were signed by him without examining them, and because advised by Edward Sparrow that they “were all right.” That at the date of the execution of the sale and notes he was unaware that Erellsen had. not credited him with the proper sums. That he signed the act of sale and notes because Edward Sparrow told him to in ignorance of his rights ; that he now discovers that Erellsen and Sparrow had defrauded him by not accounting to him for the revenues of the property, as stated in the original petition by not accounting for the Wilson notes and other matters, as already averred. The prayer was identical with that of the original petition. Two additional supplemental petitions were afterwards filed, neither of which are of moment to notice, as they in no manner change the issues made by the supplemental petition already referred to. The plaintiff answered by averring that Hood had received all the credits he was entitled to, by a general denial, and by pleading Hood’s bankruptcy as an estoppel. The dissolution of the injunction was prayed for with damages. The lower court perpetuated the injunction, except for a small sum. We think the injunction should have been dissolved and the demand of plaintiff in injunction have been rejected in tuto. What is that demand when reduced to its last analysis but an averment on the part of Hood that at the date of his surrender in bankruptcy he had credits and rights in the hands of Erellsen, which it was agreed between them should be accounted for, not to the assignee, but to Hood, and which were therefore not surrendered, and which, it is complained, were not properly accounted for to Hood after Ms discharge ? In other words, a dishonest bankrupt seeking to compel an account of moneys which he dishonestly concealed. What but an attempt to enforce judicially rights which, if ever existing, were so at the date of the bankruptcy, and therefore either passed to the assignee or- were prevented from not legally but practically passing by the fraud, the false swearing — the crime of Hood himself ? Under such circumstances can the ear of human justice be polluted by a story of it, may be a wrong, but, if so, necessarily a story of violation of both Divine and human law by the sufferer? Certainly not without a departure from that elementary principle expressed in the trite maxim of “ nemo allegans suam turpiiudinem est audiendus,” which has been so often applied by this court. 6 M. 524 ; 9 M. 352 ; 3 R. 818 ; 4 R. 219 ; 2 A. 60 ; 12 R. 79 ; 1 A. 69 ; 12 A. 249.
In fact it would be shocking to every moral sense to admit for a *581 moment that an insolvent debtor could place his property, his credits, his rights, in the hands of a third person, obtain the release from his debts by false swearing at the time of filing his schedules, at the time of his examination, at the time of his discharge ; and then, after discharge, holding up all these oaths, taken and taken again in a solemn, judicial proceeding, invoke the aid of a court of justice, not in undoing the wrong committed, but in making it more successful. It was this view which caused our predecessors to say, in Pardo vs. Pardo, 26 A. 366: “In this ease we see nn legal ground upon which defendant can succeed. He is estopped from denying the truth of his oaths and judicial admissions in the insolvent proceedings.” We are referred to Ware & Sons vs. Morris, 23 A. 665, as inculcating a contrary doctrine. If it did, we should consider it overruled by Pardo vs. Pardo. An examination, however, of the ease of Ware vs. Morris satisfies us that the court did not go to the length claimed. The case was decided by a divided court, two dissenting, the judges who concurred in the decree placing their concurrence on grounds by them stated. True, one of the opinions is as claimed, but we are disposed to think that this view was not concurred in by a majority.- Be this however as it may, if the case conflicted with the principle of nemo allegans, as applied to the matter before us, we could not adhere to it, but should overrule it, under the teachings of the almost father of our jurisprudence, saying : “ They who come into court with unclean hands ought to be told procul es lote profani, the temple of justice of your country is the house of God — it should not be made a den of thieves.”
Nor can we agree with counsel that because none of the creditors of Hood proved their debts in bankruptcy, that a court can hear the story of his infamy with better grace. Would such proof not have been made if the rights, which he now avers were his, had been surrendered? The rule of nemo allegans is the offspring of no individual interest; it is enforced in behalf of society and morality in order that persons may be deterred from committing frauds by placing them beyond the pale of legal relief, in consequence of injury suffered by them in the accomplishment of a bad purpose.
If Hood had the rights which he claims, as to which we express no opinion whatever, the filing of his schedules in bankruptcy without mention of them, has debarred him from enforcing them. If in fraud of the law and of creditors he allowed his assets to remain in the hands of the defendant, we cannot lend the aid of legal machinery to enforce the rendition of a correct account when, without Hood’s fraud, he could ask no account whatever. We will leave him where his own acts have placed him. We will deny him those rights which he has repeatedly, in the most solemn manner, under the obligations of his oath, declared *582 he had not. We cannot hear him invoking the fra-ud of his agent, to annul an authentic act, when we cannot reach the alleged fraud of the claimed agent, without passing over the greater fraud of Hood himself. Because of our passing on the case under the hypothesis that Hood could not be heard to establish hi3 own turpitude, we must not be understood as even indirectly indicating that the record sustains by proof the charges against the defendant in injunction ; into that investigation we have not entered.
The judgment of the lower court is reversed, and proceeding to render such judgment as should have been pronounced by the lower court, it is ordered and adjudged that there be judgment in favor of Henry Frellsen and against Govy Hood, rejecting the demand Of said Hood, and that the injunction sued out by said Hood be dissolved, with one thousand dollars damages as counsel fees against Hood and J. Shelby Irvine, the security in the injunction bond.
Rehearing refused.